## STEPHEN FAIRBANKS & *al. vs.* GEORGE W. STANLEY.

A general authority to commence suits, will warrant an attorney in commencing a suit and attaching property, and will render the client responsible for any damages occasioned thereby.

When one institutes a suit, he may set forth his cause of action in any manner which the law allows; and if he does so by general counts, and is enabled without amendments to maintain his suit, the law will not deprive him of any right, because he has adopted one mode of declaring in preference to another.

Property can be attached only to secure the demand sued; and if other demands are afterwards introduced, the attachment will not be good against subsequent attaching creditors.

When a writ contains the money counts, there may be some difficulty in determining what demands were put in suit. But in the absence of all contradictory proof, those will be considered as in suit, which the plaintiff then owned, and which were due and payable and liable to be introduced, without amendment, and which were in fact so introduced, and judgment rendered thereon.

But by *st.* 1838, *c.* 344, § 4, *(Rev. St. c.* 114, § 33,) no attachment of *real estate* can be valid, unless the plaintiff's demand, on which he founds his action, and the nature and amount thereof, are substantially set forth in proper counts, or a specification of such claim is annexed to such writ.

A note given in payment for goods purchased, may be introduced in evidence under the money counts.

Where new counts are introduced, they will be regarded as introducing new causes of action, unless they appear to be for the same cause.

In an action against an officer for neglecting to levy an execution on goods attached by him on the writ, he cannot defend himself by showing that he had previously sold the goods, without the consent of the creditor, and received money therefor.

THE parties agreed upon a statement of facts for decision of the Court thereon, if the Court should deem the evidence admissible, the plaintiffs objecting thereto.

This is an action on the case against the late sheriff of the county of *Kennebec*, for the neglect of *Henry Johnson*, one of his deputies. The writ bears date *July* 24, 1838. The plaintiffs are merchants in *Boston*, and on the 15th day of *May*, 1837, had a note against *Emerson & Wing* of *Waterville*, given to the plaintiffs, for certain hardware previously purchased of them, said note dated *Oct.* 29, 1836, for the sum of $518,49, and interest after

six months, payable to the plaintiffs in six months, and which was therefore over due. On that day (*May* 15, 1837,) a writ was sued out against said *Emerson & Wing*, in due form of law in favor of the plaintiffs containing two counts — 1. For money had and received $700. 2. For goods, wares and merchandize before that sold and delivered, &c. The plaintiff's attorney had a general authority from them to act for them, and to commence such suits as he might think for their interest; and on the 18th day of *May*, 1837, the plaintiffs ratified and approved of said suit and forwarded the note above described to him. Said writ was duly delivered to said *Johnson* with special orders to attach, &c., and he as deputy of said sheriff served it on the day of its date, and attached personal property to a much larger amount than the debt due to the plaintiffs. The action was entered and continued in Court until *Dec. Term*, 1837, when judgment was obtained against said *Emerson & Wing*, for the sum of $538,12 debt, being the exact amount due on said note, and $7,48 costs, which note is on file in the case, and no bill of particulars appears. There is no evidence of any fraud or collusion between the parties in said suit, but the judgment was *bona fide*. The plaintiffs took out execution *Dec.* 23, 1837, and on *Jan.* 5, following, delivered the same to said *Johnson*, then deputy of said sheriff for service, with written directions to the officer to apply the property attached on the writ, or the avails thereof to the satisfaction of said execution. Before the commencement of this action, the plaintiffs made several demands on said *Johnson* for the settlement of said execution, but said *Johnson* did not pay any part thereof, nor has it been paid, nor has the execution been returned. On the said 15th day of *May*, 1837, (after the said writ against *Emerson & Wing* was sued out and an attachment made thereon as aforesaid in favor of the plaintiffs) the *Ticonic Bank* sued out a writ against said *Emerson & Wing* to recover a debt due, declaring therein, 1st. upon a note of hand which was described in the usual form, and 2nd an account for $1800, money had and received, and afterwards on the same day gave the writ to said *Johnson* who served the same and returned thereon as attached the same personal property " subject to the previous attachment made by him on the plaintiffs' writ." The suit in favor of said *Ticonic Bank* was against *Emer-*

*son* & *Wing* and two sureties, and was duly entered and judgment obtained on said note at *Dec. Term,* C. C. Pleas, 1838, for $415, 06 debt, and $8,51, costs, and within 30 days execution issued thereon and was placed in the hands of one *Rice*, a new deputy of a new sheriff, who demanded the same property of said *Johnson*, or the proceeds thereof. Notice was given by the *Ticonic Bank* to said *Johnson* that they claimed the proceeds of the property attached in preference to the plaintiff, so far as necessary to satisfy their execution ; on the ground that their attachment was entitled to priority over the plaintiffs' in consequence of the *general money* count being inferior to the specific count in their writ, there being no specific cause of action set forth in the plaintiffs' writ, other than the two general counts as above specified ; and said *Johnson* was notified not to pay the proceeds to the plaintiffs. And said *Johnson* never has paid the same to any person, but holds the same pursuant to said notice, being indemnified by the said sureties for so doing, and no return of said property has been made on either execution. The personal property attached, being a stock of goods, was sold at public auction by said *Johnson* (while a deputy) by the written consent of said debtors and of the *Ticonic Bank*, but not of the plaintiffs. The amount received was more than enough to pay either of said executions, but not *sufficient to pay both.* *Emerson* & *Wing* at this time are insolvent and have no property to be attached. Upon this state of the case, the question is submitted to the Court as to the amount and extent of the defendants' liability, the plaintiffs being willing to waive any claim to statutory interest.

*Evans* and *I: Redington,* for the defendant, contended : —

That the plaintiffs were entitled to but nominal damages. The debtors were insolvent, and therefore a mere nominal sum can be recovered for neglect to return the execution. 14 *Mass. R.* 352 ; 15 *Mass. R.* 10 ; 16 *Mass. R.* 5 ; 4 *Mass. R.* 498 ; 2 *Shepl.* 83.

If there be any ground for claiming more than mere nominal damages, it is because the officer should have taken and applied the property attached on the writ to the satisfying of the execution of the plaintiffs. This is a mere question between two sets of creditors, each claiming the same fund. The plaintiffs are not entitled to any priority, unless they have obtained it by a compliance

with the provisions of the law. The attachment of the *Ticonic Bank* is entitled to the priority, because the writ was sued out without authority ; and because the vagueness and generality of the plaintiffs' original writ against *Emerson* and *Wing* is such, that it is to be considered but as a blank declaration, and no return of an attachment thereon can be valid against the attachment of another creditor. It gave no information to the debtor, or to any other creditors, of the precise ground of action, or of the amount claimed and intended to be secured. An attachment to be valid against other attachments, must be made on a writ which discloses exactly the claim to be covered. *Willis* v. *Crooker,* 1 *Pick.* 205. If there be no count in the writ, when served, there can be no attachment. *Brigham* v. *Este,* 2 *Pick.* 420. A writ under a general money count, merely discloses the nature of the action, whether trespass, debt, case, &c. The claim or cause of action for the plaintiff of which a creditor obtains his lien by attachment, should be clearly indicated in his writ and declaration. *Ball* v. *Clafflin,* 5 *Pick.* 303 ; *Fairfield* v. *Baldwin,* 12 *Pick.* 388. The rights of subsequent attaching creditors are always respected, and they are allowed to take advantage of any erroneous proceedings of the prior creditor. *Berry* v. *Spear,* 1 *Shepl.* 187.

There were no items filed in the second count for goods, wares and merchandize, and nothing was due for goods purchased. A negotiable note had been given for the full amount, and that is a discharge. *Whitcomb* v. *Williams,* 4. *Pick.* 230 ; *Varner* v. *Nobleborough,* 2. *Greenl.* 121.

This note could not be given in evidence under the money counts. This can only be done when money has in fact been received. It must be cash and not bills. *Barnard* v. *Whitney,* 7 *Mass. R.* 358 ; 3 *Bibb,* 378 ; 2 *Stark. Ev.* 106 ; *Chitty on Con.* 182 ; 5 *Burr.* 2589 ; *Chitty on Bills,* 362 ; *Page* v. *Bank of Alexandria,* 7 *Wheat.* 35. The note here was given for hardware, thus showing that money was not received. The *st.* 1838, *c.* 344, § 4, provides that no attachment shall be valid without the claim intended to be proved is specifically set forth in some way in the writ. This is merely declaratory of what the law was before.

Nor does the vacating of this attachment impeach the judgment. The judgment may be good between the parties, and is equally so,

whether the attachment is void as to an after attaching creditor, or not.

*H. W. Fuller, Jr.* for the plaintiffs.

The return of the officer on mesne process is conclusive evidence of his attachment of the goods. *Gardner* v. *Hosmer,* 6 *Mass. R.* 325. By that attachment he acquired a special property in the goods, while the general property was in abeyance, liable to be defeated by the contingency of the plaintiff's failing in the suit, or neglecting to sue out his execution within thirty days after judgment, or by receiving satisfaction. 11 *Mass. R.* 211 ; 9 *Mass. R.* 112 ; 2 *Mass. R.* 514. Each deputy has such a special property in the goods attached, that they cannot be attached by another officer, or by the sheriff himself. 2 *Greenl.* 270 ; 5 *Greenl.* 313 ; 5 *Mass. R.* 271 ; 13 *Mass. R.* 114 ; 14 *Mass. R.* 270. And he may have an action against any person who violates his possession, or that of his agent. 9 *Mass. R.* 104 ; *ib.* 265 ; 15 *Mass. R.* 310. Even the removal of the goods beyond the limits of the State does not affect the right of possession. 1 *Pick.* 232. All the goods are considered as in his custody from the attachment until thirty days after judgment, and he is responsible for them. 11 *Mass. R.* 242 ; 12 *ib.* 163 ; 15 *ib.* 10 ; 16 *ib.* 5. If the officer seasonably receives the execution, he is bound to levy it on the goods attached, and if he delays to do so, he is liable for the damages. 14 *Mass. R.* 473 ; 1 *Pick.* 521 ; 9 *Mass. R.* 269. And it is because the officer is supposed to have the property attached in his custody and within his reach, that he is released from his liability, if the same is not demanded within thirty days after judgment. 12 *Pick.* 202 ; 2 *Shepl.* 429. When the goods are sold by consent of parties the proceeds of the sale are held in the same manner, as if the goods had remained specifically in the hands of the officer. *St.* 1831, *c.* 508. And having the money in his hands, the officer is liable, if he neglect to apply it in satisfaction of the execution. 1 *Cranch,* 133 ; 16 *Pick.* 567.

An officer, it is true, is not bound to execute a void writ, but he cannot set up mere errors in the judgment or process in defence. 15 *Johns. R.* 155 ; 3 *Stark. Ev.* 1349 ; 8 *Mass. R.* 79. The only ground upon which he can defend, is that the plaintiff's judgment was obtained by fraud or collusion. He cannot otherwise im-

peach it. 5 *Greenl.* 288 ; 6 *Greenl.* 196. Here was no fraud or collusion. The judgment and record are supposed to have been based on good and sufficient evidence, and the Court will presume it good, while the judgment stands unreversed. The evidence therefore ought not to be admitted.

But if the evidence is admitted, then the plaintiffs and the *Ticonic Bank* stand alike. The judgments in both were general. Ours on a count for money had and received, and for goods sold ; theirs, on a note, and money had and received.

The plaintiffs' note would have sustained their count under all the circumstances. The cases cited for the defendant were here reviewed, and it was contended were either inapplicable, or did not oppose the principle sought to be established. After fully considering this question and examining the law, the Court in *Payson* v. *Whitcomb,* 15 *Pick.* 212, have fully settled the law in *Massachusetts.* The following cases clearly favor the doctrine of *Payson* v. *Whitcomb.* The notes offered in evidence in several of the cases were given for something besides money. 6 *Mass. R.* 182 ; 3 *Mass. R.* 403 ; 11 *Mass. R.* 66 ; 17 *Mass. R.* 560 ; 14 *Mass. R.* 121 ; 15 *Mass. R.* 35 ; 8 *Pick.* 48 ; 11 *Pick.* 316 ; 9 *Pick.* 93 ; 7 *Cowen,* 662 ; 4 *Dall.* 234 ; 10 *Wheat.* 333 ; 1 *H. Black.* 239 ; 14 *East,* 587.

It is believed that the law is well settled ; and if in practice, difficulties should arise, it is not for the Court to apply the remedy. To do it, would be to pass an *ex post facto* law. It is for the legislature to apply the remedy, and they may act prospectively. Since the commencement of the plaintiffs' suit against their debtors, the legislature have checked the practice, by making the attachment of real estate in such cases void ; and it may be extended to personal property. *Stat.* 1838, *c.* 344, § 4.

Can a case be found, deciding that a writ with a money count only is void ? It is not even so contended. A host of authorities would prove the contrary. These inferences follow. 1. The writ being good, contained in itself sufficient notice of the cause of action. 2. Being good, the officer was bound to serve it, and his attachment was good. 3. Once valid, it has continued good ; for no amendments have vacated it.

The general authority was sufficient to warrant the commence-

ment of the suit. And were it otherwise, the subsequent prompt ratification was equivalent to a prior authority.

The opinion of the Court was drawn up by

SHEPLEY J. — The case finds, that "the plaintiffs' attorney had a general authority from the plaintiffs to act for them and to commence such suits, as he might think for their interest." The authority appears to be sufficiently extensive, and it is not perceived, that the plaintiffs would be at liberty to deny it ; or that they could be excused from answering in damages for making the attachment, if there had been no sufficient justification for commencing the suit.

When one institutes a suit, he may set forth his cause of action in any manner which the law allows ; and if he does so, and is enabled without amendment to maintain it, the law will not deprive him of any right, because he has adopted one mode of declaring in preference to another. It does not hold out to him the right of election and then punish him for the exercise of that right.

Property can be attached only to secure the demands sued, and if other demands are afterward introduced, the attachment will not be good against subsequent attaching creditors. When the writ contains the money counts there may be difficulty in determining what demands were put in suit. Those which the plaintiff then owned, and which were due and payable and liable to be introduced without amendments, and which were so introduced, and judgment obtained upon them, cannot be regarded in the absence of all contradictory proof as not in suit, without depriving the party of his election as to the mode of declaring. The statute of 1838, *c.* 344, requiring all liens on real estate created by attachment and the amount of them to appear on record, made it necessary to deprive the party of the right to prove under the money counts any demand not specifically designated. The effect was to restrict the party to a certain definite mode of declaring or to limit his proof. This the legislature might properly do, while the Court could not, unless by a previously established general rule regulating the mode of declaring.

The suit against the debtors appears to have been instituted by the plaintiffs' attorney to secure any debt due to them in what-

ever form it might exist. A note over due and unpaid would come within the demands contemplated to be secured. The case of *Payson* v. *Whitcomb*, 15 *Pick.* 212, shews that although given for goods purchased it might be introduced in evidence under the money count. The cases of *Willis* v. *Crooker*, 1. *Pick.* 203, and *Fairfield* v. *Baldwin*, 12 *Pick.* 388, decide that where new counts are introduced, they will be regarded as introducing new causes of action, unless they appear to be for the same cause. And the remarks in the latter case respecting the propriety of designating by a bill of particulars annexed the bills or notes to be offered in evidence under the money counts, appear to refer to the necessity of doing so, when new counts are to be introduced, that the record may shew, that the new counts are for the same cause of action. None of the cases cited decide, that an attachment would be considered as vacated by proving a promissory note under a money count originally inserted in the writ.

The second count in the writ against the defendant appears to be sufficient to enable the plaintiffs to recover. The officer cannot defend himself by shewing, that he sold and parted with the possession of the goods without their consent. They were entitled to regard him as holding them to satisfy their execution; and they are entitled to recover the amount due upon it.